# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

HORIZON ETHANOL, L.L.C., BROIN
AND ASSOCIATES, INC., and BROIN
MANAGEMENT, L.L.C.,

        Plaintiffs,

vs.

GARY T. HANSON and ROBERT A.
AKERS,

        Defendants.

No. C07-3017-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANT
GARY T. HANSON'S MOTION TO
DISMISS**

_____

## TABLE OF CONTENTS

I.  *INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.  *Procedural Background*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.  *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  *LEGAL ANALYSIS*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    A.  *Rule 12(b)(1) Challenges to Jurisdiction*  . . . . . . . . . . . . . . . . . . . . . 6
    B.  *Diversity Of Citizenship*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.  *CONCLUSION*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On March 1, 2007, plaintiffs Horizon Ethanol, L.L.C. ("Horizon"), Broin and Associates, Inc., and Broin Management, L.L.C. (collectively "Broin" unless otherwise indicated) filed their complaint in this lawsuit against two former employees of Horizon, defendants Gary T. Hanson and Robert A. Akers. In the complaint, plaintiffs assert eight Iowa state common law claims against defendants Hanson and Akers. Specifically, in Count I of the complaint, plaintiffs allege that defendant Hanson breached a covenant not to compete he had with Horizon. In Count 2, plaintiffs similarly assert that defendant Akers breached a covenant not to compete he had with Horizon. In Count 3, plaintiffs allege that defendant Hanson breached confidentiality provisions of a non-disclosure agreement he had with Horizon. In Count 4, plaintiffs also allege that defendant Akers breached confidentiality provisions of a non-disclosure agreement he had with Horizon. In Count 5, plaintiffs allege that defendant Hanson breached confidentiality obligations he had to Broin. In Count 6, plaintiffs allege that defendant Akers breached confidentiality obligations he had to Broin. In Count 7, plaintiffs allege that defendant Hanson has misappropriated trade secrets belonging to Broin. Finally, in Count 8, plaintiffs similarly allege that defendant Akers has misappropriated trade secrets belonging to Broin.[1]

On March 23, 2007, defendant Hanson filed his Motion To Dismiss For Lack Of Subject Matter Jurisdiction, contending that complete diversity does not exist between the adverse parties in this case because defendant Akers is a citizen of Iowa, and Horizon's principal place of business is in Iowa, making Horizon a citizen of Iowa under 28 U.S.C.

---

[1]Plaintiffs filed an Amended Complaint on April 13, 2007, in which they reassert the same eight claims as found in their original complaint.

Case 3:07-cv-03017-MWB   Document 40   Filed 04/30/07   Page 2 of 14

§ 1332(c)(1).  Plaintiffs filed a timely resistance to defendant Hanson's Motion to Dismiss For Lack Of Subject Matter Jurisdiction in which they assert that defendant Akers is a citizen of Colorado, thereby making this court's assertion of diversity jurisdiction proper. On April 26, 2007, plaintiffs supplemented their resistance to defendant Hanson's motion.

The court turns first to the factual background of this case.  The court then turns to the legal analysis of defendant Hanson's Motion To Dismiss For Lack Of Subject Matter Jurisdiction.

### B.  Factual Background

Plaintiffs have supplied a transcript of defendant Akers's deposition as well as other exhibits in support of their resistance to the motion to dismiss from which, in addition to the complaint and defendant Akers's answer, the court has extracted the following facts.

Plaintiff Horizon Ethanol, L.L.C. is an Iowa limited liability company with its principal place of business near Jewell, Iowa.  Horizon owns a dry-mill fuel ethanol production facility and produces fuel grade ethanol and ethanol byproducts.  Plaintiff Broin and Associates, Inc. is a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota.  Broin and Associates, Inc. develops, designs, engineers, and constructs ethanol production facilities that convert corn into ethanol.  Plaintiff Broin Management, Inc. is a Minnesota limited liability company with its principal place of business in Sioux Falls, South Dakota.  Broin Management operates and manages approximately 20 ethanol plants, all of which were designed and constructed by Broin and Associates, Inc.

Defendant Gary T. Hanson was employed by Horizon as the operations manager from January 10, 2006, until December 18, 2006, when he voluntarily resigned.  During his employment with Horizon, defendant Hanson lived in or near Jewell, Iowa.  After he

3

resigned from Horizon, defendant Hanson went to work for Sterling Ethanol, L.L.C. and has resided in and been a citizen of Colorado.

Defendant Robert A. Akers was employed by Horizon as a plant operator and maintenance technician beginning on February 17, 2006. During his employment with Horizon, Akers lived in or near Radcliffe, Iowa, with is wife and daughter. Hanson and Akers became social friends while both worked at Horizon. On January 11, 2007, after Hanson left his employment with Horizon, Akers and a co-worker at Horizon drove to Colorado to visit Hanson. While in Colorado, Akers discussed employment opportunities at Sterling Ethanol. Akers learned that Sterling was going to start a new plant named Yuma Ethanol. Believing that there were more opportunities for advancement with Sterling than Horizon, Akers submitted a job application with Sterling. On January 14, 2007, the day Akers was leaving Colorado to return to Iowa, Sterling offered Akers a job. Following his return to Iowa, Akers discussed the job offer with his wife, and, at some point during the week, accepted Sterling's offer. Akers was hired as maintenance manager for Yuma. Akers accepted Sterling's job offer, in part, because he believed that there were better opportunities for advancement at Sterling. Another reason Akers accepted Sterling's job offer was that Horizon changed certain insurance benefits on January 1, 2007, and that, as a result of that change, certain medications taken by a family member were no longer covered under his insurance plan, resulting in him incurring substantial medical expenses.

On January 22, 2007, Akers notified his supervisors at Horizon that he had accepted a job in Colorado. After Akers gave notice, Horizon immediately terminated his employment and escorted him out of the Horizon facility. On February 4, 2007, Akers moved to Colorado. Before moving, Akers and his wife decided to try to find a rental

4

house in Colorado and contacted a real estate agent in Colorado to find such a house. Akers's wife stayed in Iowa until she could find a job in Colorado.

Akers moved himself, driving his Ford Expedition, loaded with his clothing, some belongings, and one of his dogs. Initially, Akers lived with Hanson in Sterling, Colorado. On February 5, 2007, Akers began working for Sterling. Akers listed Hanson's address as his home address on an employment eligibility verification and W-4 form.

On February 6, 2007, after Akers began working for Sterling, plaintiffs' counsel sent Akers a letter informing him that, in plaintiffs' counsel's opinion, Akers was violating a non-compete agreement he had signed while with Horizon and demanding that he resign his position with Sterling. Akers received the letter on approximately February 12, 2007. On February 13, 2007, counsel for Akers indicated in correspondence with plaintiffs' counsel that Akers decided to leave Horizon because Horizon changed certain insurance benefits on January 1, 2007, and that, as a result of that change, certain medications taken by a family member were no longer covered under his insurance plan, resulting in him incurring substantial medical expenses. Defendant Akers's counsel goes on to state that "Mr. Akers does intend to remain in his current employment with Sterling Ethanol." Plaintiffs' Ex. A. at 2. Since receiving the letter from plaintiffs' counsel, Akers has continued his employment with Sterling and has not attempted to secure other employment.

In March 2007, approximately one month after he moved to Colorado, Akers moved to a rental house in Yuma, Colorado. Approximately one week later, Akers's wife and daughter moved to Colorado to live with him. On the weekend of March 17, 2007, Akers and his wife rented a U-Haul trailer and moved all of their personal belongings to Colorado. Akers's wife began working at Sterling in mid-March 2007. On March 19, 2007, Akers's daughter began attending school in Colorado. Akers has rented his house in Iowa to a friend of his wife and has placed it on the market for sale.

5

## II. LEGAL ANALYSIS

### A. Rule 12(b)(1) Challenges to Jurisdiction

For the court to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir. 1982). . . .
> If the [defendant] wants to make a factual attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn* [*v. United States*], 918 F.2d [724,] 730 (citing *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)).

*Id*.

In *Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990), the Eighth Circuit Court of Appeals provided an exhaustive discussion of the procedures and requirements for determination of a 12(b)(1) motion to dismiss.

> The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside

6

the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the majority of circuits that have held to the contrary. . . . [Citations omitted.]

The reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, "is rooted in the unique nature of the jurisdictional question." *Williamson* [*v. Tucker* ], 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)]. It is "elementary," the Fourth [sic] Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id*. Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide. *Id*. Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion.

*Osborn*, 918 F.2d at 729.

The court in *Osborn* found the distinction between facial and factual attacks on the complaint under 12(b)(1) to be critical. *Id*. (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980), and *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The court stated that:

[i]n the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

7

> which would entitle him to relief.'"  In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id*. at 729 n.6 (citations omitted); *see Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) ("A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) which is limited to a facial attack on the pleadings is subject to the same standard as a motion brought under Rule 12(b)(6)."). A factual challenge to jurisdiction under 12(b)(1) is unique:

> [H]ere the trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P.. 56.  Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Osborn*, 918 F.2d at 730 (quoting *Mortensen,* 549 F.2d at 891); *see Faibisch v. University of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) (noting that "[w]hen a district court engages in a factual review, it inquires into and resolves factual disputes."). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of such a hearing, "'any rational mode of inquiry will do.'" *Osborn*, 918 F.2d at 730 (quoting *Crawford*, 796 F.2d at 929).

> Once the evidence is submitted, the district court must decide the  jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue.  [*Crawford*, 796 F.2d at 929.]  The only exception is in instances when the

8

> jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id*.

*Id*. In the present case, the court concludes that defendants have made a factual challenge to subject matter pursuant to Federal Rule of Civil Procedure 12(b)(1). However, neither party has asked for an evidentiary hearing on the issue. Rather, plaintiffs have supplied a transcript of defendant Akers as well as other exhibits in support of their resistance to the motion to dismiss.

## B. Diversity Of Citizenship

Defendant Hanson contends that although defendant Akers now resides in Colorado he remains a citizen of Iowa. As a court of limited jurisdiction, a federal court has an obligation to assure itself that it has subject matter jurisdiction in every case. *Thomas v. St. Luke's Health Sys., Inc.*, 869 F. Supp. 1413, 1424 (N.D. Iowa 1994)(citing *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)). For the court to maintain subject matter jurisdiction over this case, complete diversity of citizenship must exist between the adverse parties. *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L. Ed.435 (1806). Consequently, if defendant Akers is a citizen of the state of Iowa, this court would lack jurisdiction to hear this case because Horizon is also a citizen fo the state of Iowa. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . .").

The Eighth Circuit Court of Appeals recently summarized "the well-established rules of federal diversity jurisdiction" as follows:

> First, we determine diversity of citizenship at the time an action is filed. *See Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992). Second, complete diversity of

9

> citizenship jurisdiction under 28 U.S.C. § 1332(a) is tested by
> the citizenship of the real parties to the controversy, and the
> citizenship of an agent who merely sues on behalf of the real
> parties must be ignored. *See Navarro Sav. Ass'n v. Lee*, 446
> U.S. 458, 461, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980);
> *Iowa Pub. Serv. Co. v. Medicine Bow Coal Co.*, 556 F.2d
> 400, 404 (8th Cir. 1977); *Airlines Reporting Corp. v. S & N
> Travel, Inc.*, 58 F.3d 857, 861-62 (2d Cir. 1995). Third, the
> Federal Rules of Civil Procedure have no bearing on the
> requirements of federal diversity jurisdiction. *See Navarro
> Sav. Ass'n*, 446 U.S. at 462 n.9, 100 S. Ct. 1779; *Iowa Pub.
> Serv. Co.*, 556 F.2d at 404 n.5; *Airlines Reporting Corp.*, 58
> F.3d at 861 n.4; Fed. R. Civ. P. 82. Finally, the district court
> cannot retroactively create diversity jurisdiction if it did not
> exist when the complaint was filed. *See Sta-Rite Indus., Inc.
> v. Allstate Ins. Co.*, 96 F.3d 281, 285 (7th Cir. 1996); *Aetna
> Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775-76 (5th Cir.
> 1986). Instead, the district court must dismiss the action. *See
> Aetna Cas. & Sur. Co.*, 796 F.2d at 776.

*Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc.*, 149 F.3d 794, 797 (8th Cir. 1998); *see also Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (diversity of citizenship is determined at the time the complaint is filed). A corollary to the rule that diversity is determined at the time of filing is equally well-established: "[I]f diversity did not exist when the complaint was filed, it cannot be created by a change of domicile by one of the parties or some other event." *Saadeh v. Farouki*, 107 F.3d 52, 57 (D.C. Cir. 1997) (citing, *inter alia*, *Anderson v. Watts*, 138 U.S. 694, 702-03 (1891)); *see Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, (2004) (noting that "[i]t has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'") (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)). The party attempting to establish federal jurisdiction bears the burden of proof if diversity of citizenship is challenged. *See Altimore v. Mount Mercy College*, 420

10

F.3d 763, 769 (8th Cir. 2005); *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990); *Blakemore v. Missouri Pacific R.R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986); *Russell v. New Amsterdam Casualty Co.*, 325 F.2d 996, 998 (8th Cir. 1964); *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 914 (10th Cir. 1993), *cert. denied*, 510 U.S. 1112 (1994); *Media Duplication Servs. v. HDG Software, Inc.*, 928 F.2d 1228, 1235 (1st Cir. 1991); *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990); *Fenton v. Freedman*, 748 F.2d 1358, 1359 n.1 (9th Cir. 1984); *Bullock v. Wiebe Constr. Co.*, 241 F. Supp. 961, 962 (S.D. Iowa 1965)(citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936)).  Therefore, even though defendant Hanson has moved to dismiss this case, plaintiffs still retain the burden of showing the existence of complete diversity between the adverse parties.  *See Altimore*, 420 F.3d at 769; *Yeldell*, 913 F.2d at 537.

The dispute in this case centers on whether defendant Akers is a citizen of Colorado.  Thus, in this case, plaintiffs have the burden of proving that defendant Akers is a citizen of Colorado.  As the Eighth Circuit Court of Appeals has observed,

> The legal standard to determine citizenship is straightforward.
> Citizenship is determined by a person's physical presence in a
> state along with his intent to remain there indefinitely.  *Yeldell*,
> 913 F.2d at 537.  Once an individual has established his state
> of citizenship, he remains a citizen of that state until he legally
> acquires a new state of citizenship.  *Id*.

*Altimore*, 420 F.3d at 769-70.  An allegation of residence is not the equivalent of an allegation of citizenship.  *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987).

With these principles in mind, the court turns to determine whether plaintiffs have met their burden to establish complete diversity between the parties.  The court concludes that the record here contains overwhelming evidence that on March 1, 2007, defendant Robert Akers was a citizen of Colorado.  On that date, defendant Akers resided in

11

Colorado and worked in that state. Moreover, it is clear that he intended to remain there indefinitely. On February 6, 2007, after Akers began working for Sterling, plaintiffs' counsel sent Akers a letter informing him that, in plaintiffs' counsel's opinion, Akers was violating a non-compete agreement he had signed while with Horizon and demanding that Akers resign his position with Sterling. Defendant Akers's counsel responded to that letter on February 13, 2007, stating that "Mr. Akers does intend to remain in his current employment with Sterling Ethanol." Plaintiffs' Ex. A. at 2. Since receiving the letter from plaintiffs' counsel, Akers has continued his employment with Sterling and has not attempted to secure other employment. Moreover, defendant Akers's intent to remain in Colorado indefinitely is buttressed by his deposition testimony:

> Q. When you began working for Sterling Ethanol on February 5, 2007, did you intend to continue working at Sterling Ethanol on a permanent basis?
>
> A. Yeah. Well, yeah. Well, until Yuma was up and going.
>
> Q. Right.
>
> A. Right.
>
> Q. And when Yuma was up and going and you took over as maintenance manager, did you intend to continue working at Yuma on a permanent basis?
>
> A. It was my intention, otherwise I would have never have went to Colorado.
>
>    . . .
>
> Q. So when you started working in Colorado, you intended to live in Colorado for the next several years?

12

A.    It was my intention, as long as everything worked out.

Q.    It was your intention to stay in Colorado, as long as everything worked out?

A.    Correct.  Yes.  At first--You know, you never know what's going to happen.  Didn't know if the wife was going to have a job.  That's why she stayed back here while I started out there.

Q.    You never say Sterling Ethanol or Yuma Ethanol as something that you were just going to try for a couple months and then leave; is that right?

A.    No, no.

Q.    I mean, you made a commitment to move your --to move from one state to another, and that was because you saw the opportunity presented by Sterling Ethanol and Yuma Ethanol as a --that it had long-term potential?

A.    Correct.  Yes.

Akers's Trans., Plaintiffs' Ex. B., at 127-29.

Although Akers's family had not yet moved to Colorado by March 1, 2007,  Akers and his wife were already planning such a move by that date.  Akers's wife was looking for work in Colorado and Akers and his wife had already contacted a real estate agent in Colorado in order to aid them with their search for a rental house.  Shortly after this lawsuit was filed, Akers's wife and daughter did in fact move to Colorado, and Akers and his wife put their Iowa house up for sale.  Given this record, the court has little difficulty concluding that defendant Akers was a citizen of Colorado as of March 1, 2007.  Thus, the court concludes that plaintiffs have met their burden of showing that complete diversity

13

of citizenship exists in this case.  Therefore, defendant Hanson's Motion To Dismiss For Lack Of Subject Matter Jurisdiction is denied.

### III.  CONCLUSION

Therefore, for the reasons set forth above, the court concludes that defendant Akers was a citizen of Colorado as of March 1, 2007, and that plaintiffs have met their burden of showing that complete diversity of citizenship exists in this case.  Therefore, defendant Hanson's Motion To Dismiss For Lack Of Subject Matter Jurisdiction is denied.

**IT IS SO ORDERED.**

**DATED** this 30th day of April, 2007.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

14